

ORDERED in the Southern District of Florida on April 9, 2020.

Erik P. Kimball, Judge
United States Bankruptcy Court
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| **In re:** | **Chapter 11 Cases** |
| **MOSAIC MANAGEMENT GROUP, INC., MOSAIC ALTERNATIVE ASSETS LTD., and PALADIN SETTLEMENTS, INC.,** | **Case No: 16-20833-EPK (Jointly Administered)** |
| **Debtors.** | |
| _____/ | |

**MEMORANDUM OPINION AND ORDER
REGARDING UNITED STATES TRUSTEE QUARTERLY FEES**

Margaret J. Smith, as Investment Trustee (the "Investment Trustee") of Mosaic Investment Trust (the "Trust"), established pursuant to the Mosaic Investment Trust Agreement, in the jointly administered chapter 11 cases of Mosaic Management Group, Inc., Mosaic Alternative Assets, Ltd., and Paladin Settlements, Inc. (collectively, the "Debtors"), filed the *Investment Trustee's Motion for Entry of Order (A) Determining Extent of Investment Trust's Liability for Post-Confirmation Quarterly United States Trustee Fees and (B) Directing Reimbursement or Authorizing Credit for Overpaid Fees* (ECF No. 1228; the "Motion"). In her Motion, the Investment Trustee seeks (1) a declaration that the Trust is not liable

for post-confirmation quarterly fees payable to the United States Trustee ("UST"), to the extent such fees represent an increase as a result of a 2017 amendment to 28 U.S.C. § 1930 that applies to disbursements occurring on or after January 1, 2018 (the "Amendment"), and (2) an order directing the UST to refund to the Trust, or credit against future fees, sums already paid by the Trust to the extent arising from the Amendment.

The Court held a hearing on the Motion on February 19, 2020 and carefully considered the Motion, the related response and reply (ECF Nos. 1261 and 1262), and the arguments made at the hearing.

As discussed more fully below, the Court will grant the Investment Trustee's Motion in part, to the extent of 2% of total fees payable for disbursements made on or after January 1, 2018, during such time as the Amendment is effective.

## BACKGROUND

On June 6, 2017, the Court confirmed a joint chapter 11 plan for the Debtors. ECF No. 1036. The plan became effective on June 7, 2017. Under the confirmed plan, the Debtors transferred virtually all of their assets to the Trust. The Investment Trustee manages the Trust for the benefit of investors and other creditors with allowed claims.

In 88 of the 94 federal judicial districts, the UST oversees administration of bankruptcy cases. In the six federal judicial districts in the states of Alabama and North Carolina, bankruptcy administrators undertake an essentially identical role. The Attorney General oversees the UST program, which is part of the executive branch. Bankruptcy administrators in North Carolina and Alabama report to the Administrative Office of the United States Courts and are part of the judicial branch.

In chapter 11 cases pending in a UST district, the UST collects a quarterly fee set by Congress in 28 U.S.C. § 1930(a)(6). Historically, the entirety of the UST quarterly fee was set aside in a separate

fund to cover the costs of the UST system itself. The quarterly fee is calculated based on disbursements made by the bankruptcy estate. The Investment Trustee must pay this fee until the Debtors' cases are closed. The Debtors' confirmed plan contemplates an extended period of administration by the Investment Trustee, including prosecution of litigation for the benefit of the Trust.

At the time the Court confirmed the plan in these cases, chapter 11 bankruptcy estates paid a graduated fee based on disbursements, with a maximum quarterly fee of $30,000. After confirmation of the plan in these cases, Congress enacted the Amendment, effective October 26, 2017, substantially increasing the quarterly fee in cases with large distributions made on or after January 1, 2018. Where previously the fee in cases where quarterly distributions totaled $1 million or more was between $6,500 and $30,000, the Amendment instituted a fee based on disbursements of $1 million or more equal to the lesser of 1% of quarterly disbursements or $250,000. This increased fee provision is temporary, applying only in fiscal years 2018 through 2022, and only until such time as the UST fund achieves a stated reserve. The Trust likely will pay quarterly fees during the entire effective time of the Amendment.

In chapter 11 cases pending in North Carolina and Alabama, a bankruptcy administrator collects a quarterly fee set by the Judicial Conference of the United States, as authorized by 28 U.S.C. § 1930(a)(7). As in UST districts, the quarterly fee is calculated based on disbursements made by the bankruptcy estate. However, the Judicial Conference did not immediately raise fees to match those required by the Amendment, and when it did it made the increased fees applicable only in cases filed on or after October 1, 2018. Thus, if the Debtors' cases were pending in North Carolina or Alabama, the Debtors would not be asked to pay the significantly higher quarterly fees demanded by the UST.

The Amendment has a remarkable effect on the Trust. For the year 2018 and the first two quarters of 2019, the Investment Trustee paid $125,816.69 more than would have been required prior

3

to the Amendment. Put another way, the Investment Trustee paid a total of $174,566.70 during that period, or more than 3.5 times the $48,750.01 that would have been due prior to the Amendment.

While Congress has amended section 1930 multiple times, extending UST quarterly fees to periods after confirmation of a chapter 11 plan, and several times increasing the fee, the Amendment is unique in an important way. For the first time as a result of the Amendment, the quarterly UST fee is not used exclusively to fund the UST system. During the effective period of the Amendment, 98% of the quarterly UST fee is set aside to fund the UST system (including to fund reserves), but 2% is paid to the United States treasury without restriction. While some of this 2% is intended to offset the cost of extending certain temporary bankruptcy judgeships (including one in North Carolina), the important point is that 2 cents from every dollar paid as a UST quarterly fee during the effective period of the Amendment is not used to fund the UST system.

## RELIEF REQUESTED

The Investment Trustee asks the Court to rule that the Investment Trust is not liable for the increase in UST quarterly fees resulting from the Amendment, but is required to pay quarterly fees as though the Amendment was not enacted. The Investment Trustee asks the Court to either direct the UST to reimburse the Trust for the claimed overage already paid, or permit the Trust a credit against future quarterly fees.

## ARGUMENTS PRESENTED BY THE INVESTMENT TRUSTEE

The Investment Trustee argues that the Amendment does not apply retroactively. By this the Investment Trustee means that the Amendment does not apply to chapter 11 cases pending before its effective date of October 26, 2017.

The Investment Trustee argues that implementation of the Amendment violates either or both of the tax uniformity clause or the uniformity requirement of the bankruptcy clause of the United States Constitution. U.S. Const. art. I § 8, cl. 1 and 4. She argues that the Amendment results in

4

substantially different fees being paid in UST districts as compared to districts overseen by bankruptcy administrators. According to the Investment Trustee, whether the quarterly fees constitute a user fee or a tax, this disparity is an impermissible non-uniformity in violation of the Constitution.

The Investment Trustee argues that, if the Court determines the Amendment was intended to apply retroactively, the Amendment violates the due process clause of the United States Constitution. U.S. Const. Amend. V. She argues that the Debtors proposed and parties in interest voted on the Debtors' plan with no notice of the significant increase in quarterly fees, which materially and negatively impacts administration of the Trust. She argues that this violates the due process rights of the Debtors and the beneficiaries for whom they acted as fiduciaries.

If the Court determines that the relief requested in the Motion may only be pursued by complaint, as the UST argues in response to the Motion, the Investment Trustee argues that the Motion presents only legal issues and asks the Court to convert this contested matter to an adversary proceeding, rule on the relief requested in the Motion, and direct the parties to adjudicate any remaining contested issues in the adversary proceeding. In the alternative, the Investment Trustee asks the Court to treat the Motion as a motion for summary judgment as there are no material facts in dispute.

## ARGUMENTS PRESENTED BY THE UNITED STATES TRUSTEE

The UST argues that the Motion is procedurally defective as it seeks relief that may only be accorded in an adversary proceeding commenced by the filing of a complaint.

The UST argues that the Amendment is not retroactive as it applies only to disbursements made after its enactment. Even if considered to be a retroactive application, the UST argues that the Amendment does not violate due process as it furthers a legitimate legislative purpose (the avoidance of a burden on taxpayers to cover shortfalls in the UST fund) by rational means (a temporary fee increase affecting only the largest chapter 11 cases).

The UST argues that the quarterly fees are user fees and not taxes and so are not governed by the tax uniformity clause. The UST argues that 28 U.S.C. § 1930(a)(6) is an administrative funding mechanism authorized by the necessary and proper clause, rather than a law "on the subject of Bankruptcies," and so is not subject to the uniformity requirement of the bankruptcy clause.

If subject to the tax uniformity clause or the uniformity requirement of the bankruptcy clause, the UST argues that the Amendment results in quarterly fees that are "uniform on their face" because, according to the UST, the quarterly fees payable in bankruptcy administrator districts are statutorily required to be the same as the quarterly fees charged in the UST districts. Even if the Amendment required quarterly fee increases only in UST districts, the UST argues that the Amendment is nonetheless sufficiently uniform because it applies only where necessary to remedy the problem of depletion of the UST system fund.

The UST argues that the appropriate remedy is not to permit this bankruptcy estate to pay a lesser quarterly fee, as though the Amendment was not enacted, but "to require nationwide adherence to the statute as written." In other words, the UST would have the Court enter an injunction requiring that bankruptcy administrators charge identical fees to those established by the Amendment in all cases without regard to filing date. In the alternative, because the UST believes that the bankruptcy administrators were required to charge identical quarterly fees between January 1, 2018 and August 2018, the UST argues that the Trust would be entitled to only the additional fees paid in the third quarter of 2018 and the second quarter of 2019, in the amount of no more than $20,161.49.

Finally, the UST argues that even if the Court determines that the Investment Trustee is entitled to a refund or credit, the Court may not order such refund or credit until the United States has had an opportunity to exhaust all appellate rights. 28 U.S.C. § 2414.

ANALYSIS

It appears that this is the seventh bankruptcy court decision on the issues presented. *See In re Buffets, LLC*, 597 B.R. 588 (Bankr. W.D. Tex. 2019); *In re Circuit City Stores, Inc.*, 606 B.R. 260 (Bankr. E.D. Va. 2019); *In re Life Partners Holdings, Inc.*, 606 B.R. 277 (Bankr. N.D. Tex. 2019); *Clinton Nurseries, Inc. v. Harrington (In re Clinton Nurseries, Inc.)*, 608 B.R. 96 (Bankr. Conn. 2019); *In re Exide Techs.*, 611 B.R. 21 (Bankr. D. Del. 2020); and *In re Clayton Gen., Inc.*, No. 15-64266-WLH, 2020 Bankr. LEXIS 842 (Bankr. N.D. Ga. Mar. 30, 2020). Of these, half ruled that the Amendment, in its entirety, is unconstitutional, while the other half found the Amendment constitutional. *Compare In re Buffets, LLC*, 597 B.R. at 597, *In re Circuit City Stores, Inc.*, 606 B.R. at 271, and *In re Life Partners Holdings, Inc.*, 606 B.R. at 286 *with In re Clinton Nurseries, Inc.*, 608 B.R. at 121, *In re Exide Techs.*, 611 B.R. at 38, and *In re Clayton Gen., Inc.*, 2020 Bankr. LEXIS 842, at *29.

Jurisdiction

The Court has subject matter jurisdiction over this core matter as the Motion involves the administration of the bankruptcy estate. 28 U.S.C. §§ 1334(b), 157(a) and 157(b).

Procedural Concerns

The UST argues that the Motion should be denied because the Investment Trustee seeks relief requiring an adversary proceeding. While the Trust's obligation to pay a fee to the UST is not an interest in property of the Trust, and so does not implicate Fed. R. Bankr. P. 7001(2)[1], the Investment Trustee seeks both declaratory relief and recovery of money, implicating Fed. R. Bankr. P. 7001(1) and 7001(9). The relief sought in the Motion ordinarily must be pursued via complaint and not by contested matter as originally presented.

---

[1] Contrary to at least one reported decision, the UST quarterly fee does not result in the UST having an interest in "money that is otherwise property of the estate." *In re Clinton Nurseries, Inc.*, 608 B.R. at 105. If this was the case, every administrative claim would represent an interest in property of the estate and every dispute about an administrative claim would require an adversary proceeding. The UST is a claimant like any other, without the benefit of a specific lien on or interest in property of the estate.

7

As the UST concedes, the Court has the power to convert the Motion to an adversary proceeding if necessary. *In re Clinton Nurseries, Inc.*, 608 B.R. at 106; *In re Life Partners Holdings, Inc.*, 606 at 283; *In re Circuit City Stores, Inc.*, 606 B.R. at 267. However, because there are no material issues of fact, the issues before the Court are purely matters of law, and the Court may apply the law to the undisputed facts using simple math, there is no need for the Court to direct the Clerk to open an adversary proceeding in this matter.

Retroactivity and Due Process

The Investment Trustee argues that the Amendment does not explicitly apply to cases pending on its effective date and so does not have such "retroactive" effect. In other words, the Investment Trustee interprets the Amendment as applying only to cases filed on or after its effective date of October 26, 2017. Should the Court determine that the Amendment applies in all pending cases, as the UST argues, the Investment Trustee urges the Court to determine that the Amendment violates the due process clause because it grossly increased the expenses of this bankruptcy estate without adequate warning to parties in interest.

The Investment Trustee's argument based on retroactivity suffers from a basic misunderstanding of the concept. That parties may have acted differently if they were able to look into the future and see that the Investment Trust would be required to pay increased UST fees for transactions completed after confirmation does not make the increase retroactive. An increase in real property tax is not retroactive to the owner's acquisition of the property, even if foreknowledge might have deterred the purchase. An increase in licensing fees is not retroactive to the issuance of the license, even if the holder would not have applied for the license in the first place. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 n.24 (1994). The Amendment does not change the treatment of claims under the confirmed plan, alter any property right a creditor may have in collateral, or directly alter any contractual rights. *In re Clayton Gen., Inc.*, 2020 Bankr. LEXIS 842, at *19-20.

It would be difficult for the Court to improve on the analysis of Judge Walrath in *Exide* on the issues of retroactivity and substantive due process, which the Court adopts in full. *In re Exide Techs.*, 611 B.R. at 25-31. In summary (a) the Amendment by its terms applies to disbursements made on or after January 1, 2018, without regard to when the underlying case was filed, and so the Amendment applies to this case, (2) the Amendment is not retroactive in the constitutional sense as it does not attach new legal consequences to the Debtors' confirmed plan but addresses only disbursements made after enactment of the Amendment, and (3) even if the Amendment is considered retroactive, it does not violate due process as it serves the legitimate legislative purpose of maintaining the self-funding nature of the UST system and that purpose is achieved by the rational means of increasing fees in the largest chapter 11 cases. *Accord In re Clayton Gen., Inc.*, 2020 Bankr. LEXIS 842. The Court also agrees with Judge Walrath's ruling that the increased quarterly fee is not excessive for its purpose. *In re Exide Techs.*, 611 B.R. at 31-33.

It is not dispositive that Congress at one time stated, in the same statute, that an amendment specifically applied to all pending cases. Prior to 1996, the UST quarterly fee was payable only until the earliest of confirmation of a plan, conversion or dismissal. Thus, in most cases the quarterly UST fees ceased at plan confirmation. In 1996, Congress removed the reference to plan confirmation from section 1930(a)(6). The effect of the 1996 amendment was that the quarterly UST fee would continue to be due after confirmation, until the case was converted or dismissed. This led to confusion on whether the 1996 amendment applied in pending cases, including those with already confirmed plans. In response, Congress further amended the statute to provide that the extension of UST quarterly fees after confirmation applied to all cases pending on the effective date of the 1996 amendment "regardless of the confirmation status of their plans." The relevant course of legislation is spelled out in more detail in *In re Life Partners Holdings, Inc.*, 606 B.R. at 284-85.

At least one court has pointed to this prior legislative activity, and the absence of any specific statement in the Amendment that it applies to pending cases, to conclude that the Amendment does not in fact apply to pending cases. *In re Life Partners Holdings, Inc.*, 606 B.R. at 285. This is faulty logic. In 1996, Congress acted to remedy uncertainty resulting not from an increase in the quarterly UST fees, but from legislation extending the circumstances when such fees would be due. It is telling that Congress has increased the UST quarterly fees several times since 1996, without specifying that the increases apply to pending cases, and it has been uniformly accepted that the increased fees apply in all chapter 11 cases including those previously filed.

The change to the UST fee payable in larger chapter 11 cases, effected by the Amendment, is entirely prospective as it applies only to disbursements made after the effective date of the Amendment. The fact that the fee increase impacts pending chapter 11 cases does not make the Amendment retroactive in the constitutional sense. But even if the Amendment is considered a retroactive statute, it is tailored to address a legitimate legislative purpose in maintaining the self-funding nature of the UST System and achieves that end by the rational means of increasing fees in the largest and often most complex cases.

<u>Uniformity Requirement</u>

The Constitution requires that both taxes and bankruptcy laws be applied uniformly. The tax uniformity clause states "Congress shall have Power to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States." U.S. Const. art. I, § 8, cl. 1. The bankruptcy clause empowers Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4.

The UST argues strenuously that the UST quarterly fee statute, including the Amendment, is not a law "on the subject of Bankruptcies" as contemplated in the Constitution and so is not subject

10

to the related uniformity requirement. Yet the UST fee statute creates a claim that arises only in bankruptcy cases, in favor of the UST, an entity that exists solely to participate in bankruptcy cases. The amount of the fee due to the UST directly impacts distributions to other creditors. 28 U.S.C. § 1930(a)(6), both before and after enactment of the Amendment, is a law on the subject of bankruptcies that implicates the related uniformity requirement under the Constitution. *In re Clayton Gen., Inc.*, 2020 Bankr. LEXIS 842, at *20; *In re Exide Techs.*, 611 B.R. at 34-36; *In re Clinton Nurseries, Inc.*, 608 B.R. at 111-13; *In re Life Partners Holdings, Inc.*, 606 B.R. at 287-88; *see also St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1530-31 (9th Cir. 1994).

Some courts have explicitly ruled that UST quarterly fees are user fees rather than taxes. *In re Exide Techs.*, 611 B.R. at 32 (and cases cited). This conclusion is based on the fact that, historically, UST fees were used solely to defray the cost of the UST system or maintain reserves for that purpose. But for the first time as a result of the Amendment a small portion of the UST quarterly fee—2% of the total collected during the effective period of the Amendment—is paid to the United States treasury without restriction. It is hard to see how this small part of the UST quarterly fee is a user fee as it is not necessarily associated with the debtors' use of the bankruptcy system.

In the end, it does not matter whether the UST quarterly fee, during the effective period of the Amendment, is a user fee or a tax. For purposes of these cases, the requirement of uniformity is identical in both instances. *See United States v. Ptasynski*, 462 U.S. 74, 83 n.13 (1983) (citing *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 160-61 (1974)); *In re Circuit City Stores, Inc.*, 606 B.R. at 269.

<u>Uniform Application</u>

To satisfy the uniformity requirement, a law must apply uniformly to a defined class of persons. *Ry. Labor Executives' Ass'n v. Gibbons*, 455 U.S. 457, 469-70, 473 (1982); *Head Money Cases,* 112 U.S. 580, 594-95 (1884). The law must also be geographically uniform. *Reg'l Rail Reorganization Act Cases*, 419 U.S. at 160-61; *United States v. Ptasynski*, 462 U.S. 74, 83-86 (1983); *see also In re Reese*, 91 F.3d

11

37, 39 (7th Cir. 1996) (The uniformity requirement of the bankruptcy clause "forbids only two things"—first, "arbitrary regional differences in the provisions of the Bankruptcy Code" and second, "bankruptcy laws limited to a single debtor—or the equivalent."). The Amendment applies uniformly to those debtors with cases pending in UST districts who make distributions during the effective period of the Amendment. The parties focus on the question of geographical uniformity.

The Amendment does not apply to cases pending in the six judicial districts in North Carolina and Alabama. While the Judicial Conference belatedly raised fees in those districts to the same level as charged in UST districts, the increased fees apply only in cases filed on or after October 1, 2018. As the UST conceded, if the Debtors' cases were pending in North Carolina or Alabama, the quarterly fees payable to the bankruptcy administrator would be substantially lower. The Investment Trustee argues that this indicates a lack of geographical uniformity and so the Amendment is not constitutional.

The Investment Trustee's argument treats section 1930(a)(6), which contains the Amendment and relates only to UST districts, along with section 1930(a)(7), which addresses fees in bankruptcy administrator districts, as a singular congressional act. The Investment Trustee then argues that identical chapter 11 debtors should not be required to pay different fees for substantially the same services based solely on the district where they file.

This ignores the fact that the Amendment is aimed almost exclusively at eliminating a funding shortfall in the UST system and developing a reasonable reserve for the same. *In re Clayton Gen., Inc.*, 2020 Bankr. LEXIS 842, at *23-27. In light of this overarching purpose of the Amendment, the Court focuses on whether subsection 1930(a)(6), as amended by the Amendment, is uniform. Because the Amendment effected a fee increase only in districts where the UST is active, and in all of such districts, the Amendment is uniform. With one exception, the Court adopts Judge Walrath's analysis on this issue. *In re Exide Techs.*, 611 B.R. at 36-38.

There is a hole in this analysis that is not addressed in any of the prior bankruptcy court decisions. Not all of the UST quarterly fee payable during the effective period of the Amendment is used to defray the cost of the UST system or fund the related reserve. A small portion—2% of the total fee—is paid to the United States treasury without restriction, for application to any fiscal need. It appears that this 2% is intended to offset the extension of certain temporary bankruptcy judgeships (including one in North Carolina), but it does not matter why the Amendment carves out this component of the quarterly fee. The point is that, under the Amendment, debtors in larger chapter 11 cases in UST districts are required to pay a portion of their quarterly UST fee for national purposes rather than toward administration of bankruptcy cases in the geographic areas where the fee is charged. To the extent of this 2%, the fee required under the Amendment is not uniform and thus violates the Constitution.

Remedy

The Court will order that 2% of UST fees previously paid by the Investment Trustee as a result of disbursements made on or after January 1, 2018 will either be re-paid to the Trust or the Trust will have the benefit of a credit against future UST fees. For the period addressed in the Motion, meaning the year 2018 and the first two quarters of 2019, the Trust paid UST fees aggregating $174,566.70. For those quarters, the Trust is entitled to a refund or credit in the amount of $3,491.33. The Court will order that, going forward during the effective time of the Amendment, the Investment Trustee must pay from the Trust a UST fee equal to 98% of the amount calculated as a result of the Amendment.

Under 28 U.S.C. § 2414, this Court's order directing repayment or credit of amounts previously paid will not be final, and shall not be enforceable, until such time as the Attorney General certifies that no further appeal or request for review will be taken from such order. However, the Court's ruling with regard to UST fees not yet paid shall have immediate effect.

ORDER

For the foregoing reasons, the Court ORDERS and ADJUDGES that the *Investment Trustee's Motion for Entry of Order (A) Determining Extent of Investment Trust's Liability for Post-Confirmation Quarterly United States Trustee Fees and (B) Directing Reimbursement or Authorizing Credit for Overpaid Fees* (ECF No. 1228) is GRANTED IN PART as follows:

1. During the effective period of the 2017 amendment to 28 U.S.C. § 1930(a)(6), the Mosaic Investment Trust shall be required to pay 98% of the quarterly United States Trustee fee otherwise required thereunder. This paragraph 1 is a final order and is immediately enforceable.

2. The United States shall pay to Margaret J. Smith, as Investment Trustee, for the benefit of the Mosaic Investment Trust, or shall permit as a credit against future quarterly United States Trustee fees (at the option of the Investment Trustee), a sum equal to 2% of all United States Trustee quarterly fees previously paid by the Mosaic Investment Trust based on disbursements made on or after January 1, 2018. For the year 2018 and the first two quarters of 2019, this sum is $3,491.33. If the parties are unable to agree on the appropriate sum for any other period during which such quarterly fees were paid, either party may file a brief motion asking the Court to rule. Pursuant to 28 U.S.C. § 2414, this paragraph 2 is not final and enforceable until such time as the Attorney General certifies that no further appeal or request for review will be taken from this order.

###

Copies furnished to:
Zakarij N. Laux, Esq.

*Zakarij N. Laux, Esq. is directed to serve a copy of this order on all appropriate parties and file a certificate of service.*